(155 App. Div. 561.)

## HASTINGS LAND IMPROVEMENT CO. v. ZINSSER.

(Supreme Court, Appellate Division, First Department.   March 14, 1913.)

1. Covenants (§ 31*)—Construction.
   Under a deed from a land improvement company to one of its stockholders, reciting that the grantee would, pro rata with all the owners of lots in the tract subdivided by the company, pay assessments for improvements on any part of the tract, if such improvement be authorized by the owners of the majority of the lots, the company is entitled to count its own authorization on account of lots which it has not conveyed.
   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 30; Dec. Dig. § 31.*]

2. Covenants (§ 31*)—"Consent in Writing."
   A resolution adopted by a corporation, consenting to an improvement, is a "consent in writing."
   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 31; Dec. Dig. § 31.*
   For other definitions, see Words and Phrases, vol. 8, p. 7543.]

3. Covenants (§ 31*)—Consent to Improvements.
   Under a deed from a land improvement company to one of its stockholders, binding him to pay an assessment for improvements authorized in writing by the owners of a majority of the lots in a tract subdivided by the company, a resolution of the company, inviting all lot owners to authorize an improvement, implies consent on the part of the corporation as to lots owned by it.
   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 31; Dec. Dig. § 31.*]

4. Covenants (§ 37*)—Release.
   Under a deed from a land improvement company, which subdivided a tract into lots, binding the grantee, a stockholder, to pay assessments for improvements authorized by the owners of a majority of the lots, he was not released from that obligation on selling his stock while remaining a lot owner, though other lot owners, who were also stockholders, were permitted to take preferred stock, the proceeds of which partly paid for the improvements.
   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 37; Dec. Dig. § 37.*]

Appeal from Trial Term, New York County.

Action by the Hastings Land Improvement Company against Frederick G. Zinsser. From a judgment for defendant, and from an order

denying a new trial, plaintiff appeals. Reversed, and judgment directed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

William R. Bayes, of New York City, for appellant.

Theodore Hansen, of New York City, for respondent.

SCOTT, J. The action is upon a covenant in a deed to pay pro rata defendant's share of the cost of certain improvements. The facts are not in dispute.

In June, 1905, a number of persons organized the plaintiff corporation for the purpose of purchasing a tract of land at Hastings, which was subdivided into 51 lots. The parties interested in the project entered into an agreement, between themselves and with plaintiff, whereby each agreed to take a specified number of lots, and also agreed to take and pay for in cash the entire capital stock of the company, amounting to $5,000, ratably in proportion to the number of lots agreed to be taken by them, respectively. They also agreed that, if the said sum of $5,000 should not be sufficient to pay the cost of improving said property, they would authorize an increase of capital stock of the company to an amount sufficient to meet such cost, and take and pay for in cash, at par, pro rata, such increased capital stock, or otherwise advance the money necessary for such purpose.

The defendant was not an original incorporator, nor was he a party to the foregoing agreement. He later acquired stock, and the right to acquire certain of the lots from one Schultze, who had been an original incorporator and stockholder. He subsequently parted with the stock, and remained only a lot owner, having taken title from plaintiff in March, 1906. The deed to defendant contained this covenant on his part:

"That the owner of the premises hereby conveyed will, pro rata with all the owners of lots of the tract on said map, pay assessments for improvements on any part of said tract shown on said map, owned by the grantor, its successors, or assigns: Provided, however, that any such improvements be authorized in writing by the owners of a majority of the lots shown on said map."

The complaint alleges that thereafter certain improvements were put upon the property, after having been previously authorized in writing by the owners of a majority of the lots, and that defendants' pro rata share of the cost of such improvements amounted to $1,935, for which sum, with interest, this action was brought.

The defendant, by his answer, after certain denials designed to put plaintiff to its proof, sets up as an affirmative defense that the plaintiff increased its capital stock by the issue of preferred stock, and with the proceeds thereof paid for the said improvements, and thereby waived any and all right it might have against the defendant to recover for the costs of said improvements, and, further, that plaintiff, when it made the improvements, did not intend to charge the defendant with any share of the cost thereof.

[1] On the issues raised by the denials, the defendant's principal contention was that some of the improvements were not "authorized in writing by the owners of a majority of the lots shown on said map." To sustain this contention, he insists that the plaintiff was not entitled to count its own authorization on account of lots which it had not conveyed. This is clearly untenable. The covenant contemplates a consent by a majority of the owners of all the lots shown on the map, and it is of no consequence who owned them. If plaintiff had retained title to a majority of the lots, it could have authorized an improvement without the consent of any other owner.

[2, 3] The defendant also takes exception to the proof of plaintiff's consent as the owner of lots. The covenant does not prescribe any particular form in which authorization shall be given, only that it must be in writing, and in the case of a corporation a resolution entered upon the minutes consenting to an improvement is a consent in writing. Nor is it necessary to use any particular form of words. A resolution inviting all lot owners to authorize an improvement necessarily implies a consent to such improvement on the part of the body adopting the resolution. The other objections to plaintiff's proof are technical and without merit.

[4] We have much doubt as to the sufficiency on its face of the separate affirmative defense. It appears to rest upon the theory that, although defendant agreed to pay his pro rata share of the cost of the improvements, he was released from that obligation because the plaintiff had been able to raise money elsewhere. The logic of this proposition is not apparent, nor have we found it easy to follow the reasoning upon which it is attempted to sustain the judgment. Although the learned trial justice directed a verdict subject to his opinion, he omitted to formulate his opinion in writing, and we are therefore not advised upon what particular ground he finally concluded that the defendant was entitled to judgment.

If we may judge of the reasons actuating him in directing a verdict from his statement at the time, he was then of the opinion that in some way defendant, being a lot owner and not a stockholder, was relieved from his obligation under his covenant because other lot owners, who were also stockholders, were permitted to subscribe for and take preferred stock, the proceeds of which went, in part, to pay for the assessments. If this was the basis of the judgment, we think it was erroneous. The original agreement between the incorporators contemplated a future increase of capital, and it was increased by the issue of preferred stock. Those who remained stockholders, and were such when the preferred stock was issued, had a preferential right to subscribe for and take the new stock. That defendant was not allotted any, for which, however, he never applied, was due to his own act in disposing of his stock. He still remained, however, an owner of lots, bound under his covenant to pay his pro rata share of improvements made for the common good of all the lot owners, and from which he presumably benefited in common with his neighbors. It appeared in evidence that the issue of preferred stock fell far short of providing

sufficient funds to pay for all the improvements, and that plaintiff was obliged to obtain the balance by cash payments from lot owners and by borrowing.

It was conceded by all the parties that there was no question of fact for the jury, as there evidently was not. Upon the undisputed facts, the plaintiff was entitled to judgment, and his motion to that effect should have been granted. By their stipulation that the judgment be considered as one entered upon the decision of the court, the parties have left it open to us to direct such judgment as the facts require, and thus make an end of the case.

Judgment and order reversed, and judgment directed for plaintiff for the amount sued for, with interest, with all costs of action, including those on appeal to this court. All concur.